293 So.2d 472

**Betty C. DOMINEY and Lamar Dominey**

**v.**

**G. B. MATHISON, Sr.**

**SC 523.**

Supreme Court of Alabama.

April 18, 1974.

J. Gorman Houston, Jr., Eufaula, for appellants.

294

T. R. Ward, Halstead, Whiddon & Woodham, Abbeville, for appellee.

JONES, Justice.

This case involves a boundary dispute between neighbors. The following rough sketch may be helpful:

SE 1/4
Section 15,
T.8, R.28
Henry County, Alabama

G. B. Mathison, Sr.—complainant, appellee—claims all of the West ½ of the SE ¼. Betty C. and Lamar Dominey—respondents, appellants—claim all of the East ½ of the SE ¼, plus that part of the W ½ which lies east of Wells Branch and north of Craddock Spring Branch. Thus, the Bill To Establish Boundary Lines brought by Mathison focused the issue: Is the true line between the parties the N/S line dividing the east and west halves of the quarter section, as contended by Mathison, or the N/S line dividing the quarter section north of its intersection with Wells Branch and continuing in a southwesterly direction through the West ½ along Wells Branch, as contended by the Domineys? The disputed area is a triangular shaped parcel containing approximately 14 acres in the SE corner of the West ½ of the SE ¼ of Sec. 15, T. 8, R. 28.

The trial Court, holding that Mathison's boundary had been established by an earlier bill to quiet title suit, made the following findings of fact: The Domineys, for 63 consecutive years, had (1) an unbroken record chain of title antedating Mathison's, (2) actual and constructive possession, and (3) assessed and paid taxes on the disputed land; Mathison brought a bill to quiet title against the subject property (along with other property not here involved) by description, the known and unknown heirs of his immediate predecessor in title, and any and all persons who had any interest or claim in part or whole in the property, which suit resulted in a final decree dated July 19, 1965, fixing the fee simple title in Mathison.

The trial Court's decree continued: "Respondents' [the Domineys'] predecessors in title, who . . . were in actual possession of that portion of the W ½ of the SE ¼ . . . with record title thereto, and with such property assessed for . . . taxes . . . were not made parties to said suit [to quiet title] by name and

did not appear or defend their title in said suit; the Complainant testified that this suit [the prior action to quiet title] was not brought for the purpose of establishing boundaries but was brought to clear title to the land caused by confusion in the Last Will and Testaments of certain Complainant's predecessors in title; . . . ." The trial Court concluded, however, that "all persons claiming any title to, interest in or lien or encumbrance upon" the above described property, which included the W ½ of the SE ¼, were made parties to this suit and served by publication; and, therefore, the final decree favorable to Mathison in the bill to quiet title suit is res judicata "as to these Respondents to that disputed land."

The question presented is whether the trial Court correctly applied the doctrine of res judicata within the factual context of this case. Stated otherwise, is the final decree in the former suit to quiet title binding on the Domineys under the applicable facts as here found by the trial Court? The question, as alternatively posed, must be answered in the negative. We reverse and render.

■ Our analysis begins with a restatement of the maxim: The doctrines of res judicata and estoppel by judgment apply only to the parties and their privies to the suit in which judgment was rendered. Edge v. Bonner, 257 Ala. 385, 59 So.2d 683 (1952).[1]

■ Admittedly, then, if the Domineys were parties to the former suit, the trial Court has correctly concluded that they are bound by its judgment. That portion of the final decree in the instant case referred to above makes clear the basis for this conclusion. The Chancellor found that, although the Domineys were not made parties by name and did not appear or defend this title in said suit, "all persons claiming any title to, interest in or

---

[1]. The remaining elements necessary to the application of res judicata, i. e., same subject matter, same point in question and judgment rendered on that point, are not pertinent to our inquiry. See Quinnelly v. City of Prichard, [1974], 292 Ala. 178, 291 So.2d 295.

lien or encumbrance upon"[2] were made parties and served by publication.

Our determination of whether "[A]ll persons claiming any title to [or] interest in * * *" and notice to such persons by publication, were legally sufficient to make the Domineys parties respondent, as found by the trial Court, is dependent upon an analysis of Chapter 32, Article 2, Title 7, Code of Alabama 1940, as amended, commonly called the Grove Act. Only that portion of § 1117 relating to parties respondent to a proceeding in rem to establish title to land is material to our inquiry:

"A bill under this article must be brought against the land . . . . It must describe said land . . . and state specifically what claim . . . complainant claims to have . . . . It shall also make party or parties respondent . . . all person against whom complainant claims title . . . . Such bill shall also make party or parties respondent thereto all persons who are known to complainant to have had possession of said lands . . . within 10 years next preceding the filing of the bill, or who are known to complainant to claim said lands . . . . Such bill shall also make party or parties respondent . . . all persons who have at any time within 10 years next preceding the filing of the bill assessed or paid any taxes upon said lands . . . . Should complainant, after *exercising reasonable diligence* be unable to locate the whereabouts [of such respondents], . . . the facts showing just what diligence the complainant has exercised must be specifically alleged in the bill . . . ." [Emphasis supplied.]

Although Gill v. More, 200 Ala. 511, 76 So. 453 (1917), preceded the 1951 amendment to this Code section, the principles set out in *Gill* (a suit seeking cancellation of a decree from a former suit to quiet title),

as to the requirements of due process, are applicable to the instant case. Justice Thomas, speaking for the Court, stated (200 Ala. 520, 76 So. 462):

"The statutes providing for constructive notice by publication required and imposed the duty of diligent inquiry on the complainant in former suit, Gill, for the parties in adverse interest to be made respondents. He was bound to exercise that reasonable diligence to ascertain the names and residences of all such parties having or claiming an interest in the lands, and to make them parties respondent by perfecting service as required under our statutes (Code, §§ 3106, 5443) and by due process of law.

" . . . .

"It is no doubt true that, so far as a substituted service on a . class of unknown claimants is permitted at all, under the Constitution in proceedings quasi in rem it rests upon the ground of necessity; and 'this necessity will not justify the omission of personal service upon all who could with reasonable diligence be ascertained and found . . .'

" . . . our statutes giving the right to quiet titles to lands as to adverse claims, etc., impose on the complainant in such an action the affirmative and active duty to make a bona fide and reasonably diligent inquiry to ascertain the names and residences of all persons who claim or own an adverse interest in the lands, the titles to which are sought to be quieted, and who are sought to be concluded by the decree, and to make *them parties respondent*. Failing in this duty, colorable jurisdiction cannot be given a court of equity to proceed therein, and under such failure of duty no statutory authority exists for bringing in as parties respondent on the perfecting of service of process by publication supposed or actual parties in interest."

2. The former suit, the Bill to Quiet Title, named as parties respondent the property in question (and other property not here involved), certain known heirs of one of Mathi-

son's predecessors in title, the unknown heirs, and "all persons claiming any title to, interest in or lien or encumbrance upon" subject property.

In the present case, where the parties were neighbors, each living on property adjacent to the disputed area—with the Domineys in actual possession, holding a record title, and assessing and paying taxes —the Domineys could not be included as parties respondent under the omnibus clause, "all persons claiming any title to [or] interest in [subject property]."

Mathison insists that the decree is valid on its face due to the allegation of diligent search contained in the bill in the former proceedings. We disagree.

In Spencer v. Spencer, 254 Ala. 22 (27), 47 So.2d 252 (1950), Justice Foster stated:

"[F]alse allegations in a bill on which its jurisdiction is founded, and which are necessary to invoke such jurisdiction, constitute a fraud on the court and a decree on such allegations is procured fraudulently and is subject to attack in equity, if the defendant was duly diligent."

Here, there was only an allegation of diligent search in the former suit which was not supported by other specific allegations or proof. Such a mere allegation was insufficient to confer jurisdiction of the court over the Domineys as parties to the prior suit. Since the Domineys were not parties to the first suit to quiet title, they were not bound by the final decree in that proceeding.

Moreover, in Fitts v. Alexander, 277 Ala. 372 (375), 170 So.2d 808 (1965), it was stated:

"Such a bill [to quiet title] will lie in only two fundamental situations, one of which is where the complainant is in the actual peaceable possession of the property, and the other is where no one is in the actual possession of the property."

The facts, as found by the trial Court, show that neither of these fundamental situations existed as to the disputed property in the case at bar.

That the application of the above principles compels our reversal is made abundantly clear by a brief review of the pleadings and findings of fact by the trial Court. The Domineys' answer to Mathison's Bill To Establish Boundary Lines sets out their record title, their acts of possession, and a written admission by Mathison's attorney that Wells Branch was the boundary line.[3] Mathison's amended bill

3.

"T. R. Ward
"Attorney at Law
"125 North Court Square
"Abbeville, Alabama 36310
"May 28, 1968

"Mr. Lamar Dominey
"Route 3
"Abbeville, Alabama
"Dear Lamar:
    "I have made a thorough check into the matter of the dividing line between you and G. B. Mathison. I am of the opinion that Wells Branch is the dividing line between your properties all the way.
    "I have advised Mr. Mathison of my opinion. He says that he is now satisfied; that he makes no claim to your property and that he hopes there is no ill feeling because of his investigation.
    "Mr. Mathison purchased the Ennis land by the acre and his deed called for a certain description. The acreage called for took in everything described in his deed, which included the part in dispute. I believe that with the part on the upper side west of Wells Branch belonging to him his acreage will be most nearly what he paid for. This will almost off set the amount described east of Wells Branch on the lower side.
    "I appreciate your coming by and giving the information that you did on this matter.

                                   "Sincerely yours,
                              /s/"T. R. Ward
                                   "T. R. Ward

"TRW:jcb"

sets out his title, possessory acts, and the final decree from the suit to quiet title. The Domineys' cross-bill in the nature of a bill of review seeks to have the July 19, 1965, decree set aside for actual fraud, or, in the alternative, to deny its use as a muniment of title in this suit. The cross-bill alleges that during the pendency of the former suit the Domineys had record title, were in actual possession, assessed and paid taxes on the disputed property, were not made parties to the suit to quiet title, and had no actual knowledge thereof until the instant suit, all of which latter allegations were confirmed by the trial Court's findings of fact.

"Proceedings to quiet title are very valuable remedies, but should not be abused or handled in a slipshod manner. Where the respondents do not receive actual notice, particular care should be taken to see that there is substantial compliance with the provisions of the statute." [4]  Shuford B. Smyer, Proceedings In Rem To Quiet Title, 23 Alabama Lawyer 209 (215) (1962). Mathison has failed to substantially comply wtih Title 7, § 1117, Code of Alabama 1940, as amended. It is important to emphasize that it is the requirements of due process of law that mandate such compliance.

■  The boundary lines of the disputed area are well defined by discernable landmarks, i. e., Wells Branch on the west and J. B. Craddock Spring Branch on the south. It is unnecessary, therefore, to remand the case for further proceedings. Accordingly, the Domineys are decreed to own the disputed property.

Reversed and rendered.

HEFLIN, C. J., MADDOX and FAULKNER, JJ., and LAWSON, Special Judge, concur.

4. Our inclusion of this quote is not to be construed as criticism of the complainant or his counsel in the handling of the prior suit to quiet title. The record of this prior proceeding is before us and it is clear—as com-

mented upon by the trial Court in the instant case—that it was not the purpose of the prior suit to fix the boundary lines between the parties to the present litigation.