401 So.2d 764 (1981)
CENTURY 21 PREFERRED PROPERTIES, INC., a Corporation, et al.,
v.
The ALABAMA REAL ESTATE COMMISSION, et al.
The ALABAMA REAL ESTATE COMMISSION, et al.
v.
CENTURY 21 PREFERRED PROPERTIES, INC., a Corporation, et al.
79-803, 79-885.
Supreme Court of Alabama.
July 17, 1981.
*765 Sydney R. Prince, III, Carroll H. Sullivan and Edward C. Greene of Inge, Twitty, Duffy & Prince, Mobile, and Charles A. Stakely of Rushton, Stakely, Johnston & Garrett, Montgomery, for appellants.
T. W. Thagard, Jr., and David R. Boyd of Smith, Bowman, Thagard, Crook & Culpepper, Montgomery, and George K. Williams of Williams, Spurrier & Rice, Huntsville, for appellees.
JONES, Justice.
This cause was initiated by Century 21 Preferred Properties, Inc., Century 21 Ambassador Realty, Inc., Century 21 Lofton Real Estate, Inc., and Lynn Clowers Real Estate Company, Inc., against the Alabama Real Estate Commission, et al., seeking injunctive relief against the enforcement of a regulation relating to franchisee advertising.[1]
Suit was filed in the Circuit Court of Morgan County, Alabama, on November, 1, 1979, and, subsequently, the suit was transferred to Montgomery County pursuant to Code 1975, § 6-3-20. Plaintiffs allege:
1) The regulation exceeds the scope of the Commission's rule-making authority.
2) The legislation is unconstitutional as being tantamount to "special legislation."[2]
3) The regulation was illegal and void because its enforcement has the effect of restraining trade.[3]
4) The regulation unlawfully impairs the obligation of contracts.
5) The regulations were passed without prior "notice" or opportunity to be heard by any of the affected parties, such action being violative of procedural due process.
The Commission's, and its member Defendants', answer sets up various grounds of general denial plus the defense of res judicata, pleading a former federal court adjudication of identical issues.
*766 Immediately prior to the preliminary injunction hearing, counsel for the parties stipulated (obviating the need for the injunction) that enforcement of the regulation would be suspended pending a determination of the merits of the case. On July 8, 1980, the trial court entered an order denying Plaintiffs-Appellants' requested relief, but, thereafter, granted Appellants' motion for an injunction pending appeal.
By this appeal, Century 21 franchisees and a Realty World franchisee ask that this Court: 1) reverse the trial court and render a judgment in their favor; or, in the alternative, 2) prohibit enforcement of said regulation until Appellants are afforded the rights of procedural due process; or 3) grant Appellants a new trial in the circuit court of Morgan County inasmuch as the trial judge allegedly erred in transferring the case from Morgan County to Montgomery County.
The Commission filed timely notice of its cross-appeal from that part of the trial judge's order holding that Appellees' affirmative defenses of res judicata, collateral estoppel, and lack of clean hands were inapplicable to the case. These cross-appeal contentions are based upon certain prior litigations in federal court involving other Century 21 franchisee parties plaintiff.
The trial court's order, relative to the res judicata issue, reads:
"If successful, the defendants' res judicata defense would constitute a bar to the prosecution of this action. Accordingly, it will be considered first.
"The defendants strenuously contend that the claims in the instant case have or should (under the doctrine of `pendent jurisdiction') have been litigated in the Mobile litigation, and that although the plaintiffs are not technically the same here as in the Mobile case, they are substantially identical. They contend that the Mobile judgment should bind the current plaintiffs because their interests were represented adequately by the parties in the earlier suit. See, e. g., Southwest Airlines Co. v. Texas International Airlines, Inc., 546 F.2d 84, 94-5 (5th Cir. 1977), and Aerojet-General Corporation v. Askew, 511 F.2d 710, 719 (5th Cir. 1975).
"In support of their contention, defendants point out that the interests of the plaintiffs in both suits, i. e., the use of the existing Century 21 tradename and trademark, are identical; that Mr. Prince, Regional Counsel for Century 21, represented the plaintiffs in each case; and that the plaintiffs in the federal litigation have the ability, through Mr. Prince and their franchise agreement, to control the prosecution of this litigation. Substantial evidence supporting their contentions has been presented to and considered by the Court.
"Plaintiffs argue that the doctrine of res judicata has no application, since the federal court litigation involved only federal, and not state, law claims, and since the parties in the two cases are not identical, and were not in privity. The Court notes, however, that on the first day of the trial of this case, the plaintiffs sought and were granted permission to amend their complaint. The amendment added federal due process claims which were litigated in the Mobile federal suit.
"Although the Court considers the defendants' argument to have considerable appeal under the instant facts, it nevertheless concludes that, in the absence of some controlling precedent in Alabama law, the facts are insufficient to bar the instant case under the doctrine of res judicata.
"For substantially similar reasons, the Court concludes that the defenses of collateral estoppel and clean hands lack sufficient merit to warrant dismissal of this action."
Because of our holding favorable to the Appellees with respect to the res judicata issue, we address only one issue presented by the appeal: the propriety vel non of the trial court's order transferring the case to Montgomery County.

On the Appeal

VENUE
Acknowledging the general law that a suit against a State agency with statewide *767 jurisdiction can be brought only in the county of its principal place of business, Appellants nevertheless urge that "the statutory scheme under which [the Commission] operates" affords Appellants an election to sue either in Morgan County or Montgomery County. The thrust of this argument (citing Boswell v. Citronelle-Mobile Gathering, Inc., 292 Ala. 344, 294 So.2d 428 (1974)), seeks to juxtapose portions of §§ 34-27-36 (authorizing the Commission to revoke or suspend real estate licenses) and 34-27-38 (providing the mechanism for judicial review of such administrative orders by the circuit court of the licensee's residence) with the general rule limiting venue to Montgomery County.
From this perceived premise, Appellants conclude:
"It is quite clear that the [appeals procedure of Section 34-27-38] contemplates and in fact authorizes the review of decisions made by the Commission pursuant to the authority vested in the Commission under Section 34-27-36. Inasmuch as it was upon this statutory provision, Section 34-27-36, that the Commission relied in promulgating the `50-50 Rule', it follows that the appellants were certainly entitled to avail themselves of the statutorily prescribed procedure by which a judicial review of the Commission's decision to promulgate this regulation could be achieved."
This argument and its effort to analogize this case with Boswell lack persuasion for two reasons: 1) the Boswell Court was aided by a specific statutory provision (The Uniform Disposition of Unclaimed Property Act, §§ 35-12-20, et seq.), allowing suits thereunder either in Montgomery County or the county of the aggrieved party's residence; and 2) § 34-27-38the statute here under considerationdeals specifically with suspension or revocation proceedings. The fact that the outcome of this declaratory judgment case may ultimately result in a proceeding in which a real estate licensee is charged with violating the challenged regulation does not abrogate the operative effect of the general rule that the venue for a suit of this nature lies exclusively in Montgomery County, the principal place of business of the Alabama Real Estate Commission. Alabama Youth Services Board v. Ellis, 350 So.2d 405 (Ala.1977).

On the Cross-Appeal[4]

RES JUDICATA
Posture of the Case
On August 10, 1978, Century 21 Real Estate Corp., the franchisor and owner of the trademarks and tradenames in question; Century 21 of the South, a franchisee of Century 21; and numerous Century 21 sub-franchisees from throughout Alabama filed suit in the United States District Court in Mobile, alleging numerous constitutional and statutory deficiencies in the Commission's "50:50" Rule. Subsequently, the Commission agreed to refrain from enforcing such promulgation pending a determination of its validity in federal court by a trial on the merits. Prior to trial, Century 21 filed a motion to stay the Mobile federal action pending the forthcoming decision from the United States Supreme Court concerning the validity of a similar "50:50" regulation from the State of Nevada.
On December 22, 1978, District Judge Virgil Pittman granted Century 21's motion to stay, explaining:
"The attorneys for the plaintiffs and defendants agreed that the issues before the United States Supreme Court in the case of Century 21 Real Estate Corporation, et al. v. Nevada Real Estate Advisory Commission, et al. [440 U.S. 941, 99 S.Ct. 1415, 59 L.Ed.2d 630], Supreme Court Docket Number 78-683 will be dispositive of all the issues in the case before *768 this court without the necessity of taking testimony."
On March 5, 1979, the Supreme Court summarily affirmed the Nevada three-judge District Court panel decision, upholding the validity of the "50:50" Rule. Century 21 Real Estate Corp. v. Nevada Real Estate Advisory Commission, 440 U.S. 941, 99 S.Ct. 1415, 59 L.Ed.2d 630 (1979). Thereafter, the Commission moved for summary judgment on the basis of the parties' agreement to be bound by the Supreme Court determination. On August 20, 1979, Judge Pittman granted the Commission's motion for summary judgment with the following explanation:
"This court was unwilling to issue a stay unless the parties agreed that the Nevada Real Estate Advisory Commission case pending before the Supreme Court would be dispositive without argument as to what was decided and what was not decided.
"It was the court's understanding that the disposition by the Supreme Court would be binding on the parties without qualification.
All of the issues were presented to the United States Supreme Court. It is, therefore, ORDERED, ADJUDGED, and DECREED that the plaintiffs' complaint should be, and is hereby, DISMISSED with prejudice."
In his order, granting a 120-day stay, Judge Pittman declared:
"At a hearing ... on the Motion for Summary Judgment, plaintiffs' counsel requested that, in the event the court should grant the motion, defendant's enforcement of the `50:50 ratio rule' be stayed for 120 days to enable the plaintiffs to comply with said rule in an ordinary and economical manner. In this connection, counsel pointed out that various signs, letterheads, stationery, and the like would have to be altered to comply with said rule. The court has considered the equities of this request, and concludes that a stay of the enforcement of the regulation is appropriate under the circumstances."
Two months later, on October 27, 1979, in a Century 21 Regional Bulletin, Appellants' counsel wrote all Century 21 Alabama franchisees the following:
"It's time to move on to protect ourselves from this unfair rule. We expect the immediate filing of one, perhaps two, lawsuits in state courts challenging the Commission's authority under state law to pass the 50/50 ratio rule....
As previously noted, this state action was commenced in circuit court on November 1, 1979.
While, ordinarily, it is not this Court's function to inquire into a party's motives in his pursuit of legal remedies, we are constrained to observe that the journey of these combined federal and state litigations run afoul of the nonrelitigation spirit of the res judicata and equitable estoppel doctrines. Simply stated, Appellants, though identical parties in interest, having exhausted their remedy in one forum, now seek "another bite at the apple" in a second forum.
Substantial Identity of Issues.
Under both Alabama law (Educators' Investment Corp. of Ala., Inc. v. Autrey, 383 So.2d 536 (Ala.1980), and Wheeler v. First Alabama Bank of Birmingham, 364 So.2d 1190, 1199 (Ala.1978)) and federal law (Wasoff v. American Automobile Insurance Co., 451 F.2d 767, 769 (5th Cir. 1971)), the doctrine of res judicata prohibits the relitigation of all matter which was or could have been litigated in the prior action.
This doctrine is based on the notion that
"[a] party ... is not at liberty to split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which special relief is sought, and leave the rest to be presented in a second suit, if the first fail. There would be no end to litigation if such a practice were permissible." Baltimore Steamship Company v. Vernon Phillips, 274 U.S. 316 [47 S.Ct. 600, 71 L.Ed.2d 1069] (1926).
This doctrine also "bars state litigation on a part of the claim that could have been, but was not, heard in a federal action and it *769 bars suit in a state court on a state law claim that, under the doctrine of pendent jurisdiction, could have been joined with a claim under federal law in the federal action." 17 Wright & Miller, Federal Practice and Procedure, § 4226, at 343-4 (1978). See, also, Educators' Investment Corp. of Ala., Inc. v. Autrey, supra.[5]
Inherent in such substantive principles of jurisprudence is a determination, in this case by this Court, of whether or not the moving party was precluded from asserting both state and federal theories of recovery in the initial federal court proceedings. Such a determination, be it pro or con, must necessarily coincide with an analysis of pendent jurisdiction.
Pendent jurisdiction, in the sense of judicial power, exists whenever there is a claim "arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their authority ...," U.S.Const., art. III, § 2; and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case." The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 53 S.Ct. 549, 77 L.Ed. 1062 (1933).
The state and federal claims must derive from a common nucleus of operative fact. See Starker v. U. S., 602 F.2d 1341 (9th Cir. 1979). But if a plaintiff's claims, regardless of their federal or state character, are such that he would be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole. United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); cf., Armstrong Co. v. Nu-Enamel Corp., 305 U.S. 315, 325, 59 S.Ct. 191, 196, 83 L.Ed. 195 (1938). Note, Problems of Parallel State and Federal Remedies, 71 Harv.L. Rev. 513, 514 (1958).
State law claims are appropriate for federal court determination if they form a separate but parallel ground for relief also sought in a substantial claim based on federal law.
"`[T]he whole tendency of our decisions is to require a plaintiff to try his whole cause of action and his whole case at one time.'" [United Mine Workers of America v. Gibbs, supra, citing Baltimore Steamship Company v. Vernon Phillips, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069 (1927).]
Pendent jurisdiction need not be exercised in every case in which it is found to exist. It is a doctrine of discretion, not of plaintiff's right. United Mine Workers of America v. Gibbs, supra; Massachusetts Universalist Convention v. Hildreth & Rogers Co., 183 F.2d 497 (1st Cir. 1950). Moynahan v. Pari-Mutuel Employees Guild of California, Local 280, 317 F.2d 209, 211-212 (9th Cir. 1962). Its justification lies in considerations of judicial economy, convenience and fairness to litigants. Generally, absent these considerations, federal courts hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); United Mine Workers of America v. Gibbs, supra.
Ordinarily, the question of power to hear the whole will be resolved on the pleadings. But whether pendent jurisdiction has been properly assumed is one which remains open throughout the litigation. United Mine Workers of America v. Gibbs, supra.
*770 Appellants' argument in federal court, as well as before this Court, is bottomed upon the alleged "unfairness" of the "50:50" Rule. Whether it be a challenge to the Commission's authority to promulgate such a mandate or allegations concerning an absence of minimum procedural due process guarantees prior to its enactment, Appellants' center of gravityabout which all else turnsremains the reasonableness of the "50:50" Rule.
While we are quick to note the nebulosity of the term "common nucleus of operative fact," any holding negating its presence in the instant case would read the concept right out of existence. Assuming substantial identity of parties, we hold, therefore, that Appellants' state and federal claims are simply alternative grounds of recovery for the same cause of action.
Substantial Identity of Parties
Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Res judicata applies where the parties to both suits are "substantially identical." Wheeler v. First Alabama Bank of Birmingham, supra; Astron Industrial Associates, Inc. v. Chrysler Motors Corp., 405 F.2d 958, 961 (5th Cir. 1968).
Judgments can bind persons not party (or privy) to the litigation in question where the nonparties' interests were represented adequately by a party in the original suit. Southwest Airlines Co. v. Texas International Airlines, 546 F.2d 84, 94-95 (5th Cir. 1977). A person may be bound by a judgment even though not a party to a suit if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative. Aerojet-General Corporation v. Askew, 511 F.2d 710, 719 (5th Cir. 1975). Moreover, if a party has "a sufficient `laboring oar' in the conduct" of the litigation, then the principle of res judicata can be actuated. Montana v. U. S., 440 U.S. 147, 155, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979).
Appellants contend, and we agree, that the parties to the federal action and in the cause now before us were not identical. Applying the legal precedent to the facts heretofore set out, however, we find they were "substantially identical," that Plaintiffs' rights in this action were adequately represented in the federal litigation, and that identical parties in interest retained central control of the litigation in both forums. See Restatement (Second) of Judgments §§ 78, 78.1 and 88 (Tent. Draft Nos. 3 and 4, 1976, 1977).
In summary, our holding is that 1) both the federal and state claims arose from a common nucleus of operative fact; and 2) the parties to both causes were substantially identical. Therefore, Appellants' action in the circuit court is barred by the doctrine of res judicata. Thus, the trial court's judgment denying the relief sought by the Plaintiffs is affirmed.
We further express the opinion that the trial court's findings on the merits of the case are compelled by Century 21 Real Estate Corp. v. Nevada Real Estate Advisory Commission, 440 U.S. 941, 99 S.Ct. 1415, 59 L.Ed.2d 630 (1979).
AFFIRMED.
SHORES, BEATTY and ADAMS, JJ., concur.
TORBERT, C. J., and ALMON, J., concur specially.
MADDOX, FAULKNER and EMBRY, JJ., dissent.
ALMON, Justice (concurring specially).
I concur in the affirmance of the judgment because I believe the regulation to be reasonable and not violative of either the state or federal constitutions.
TORBERT, C. J., concurs.
MADDOX, Justice (dissenting).
The Court agrees with the argument of the cross-appellants, the Alabama Real Estate Commission, its executive director and *771 the individual members thereof, that the trial court erred in holding that plaintiffs' suit as against these defendants was not barred by an application of the doctrine of res judicata.
Even a cursory examination of this rule of law as applied to the facts of this case reveals that it has no application to the instant proceeding.
In this dissent, I will make a brief statement of the facts and will then state what principles of law I think are applicable.
In the Mobile federal court litigation, federal questions concerning the validity of the Commission's "50:50" Ratio Rule were raised by a number of parties plaintiff, none of whom participated in the instant action. The plaintiffs in the federal suit were Century 21 Real Estate Corporation; Century 21 Real Estate of the South, Inc.; Century 21 Cliff Homes, Inc.; Martin S. Sternberg, d/b/a CENTURY 21 ALA "1"; Century 21 Wildman Realty, Inc.; and Century 21 Jordan Cooper Realty, Inc. Century 21 Real Estate Corporation is, of course, the originating franchisor organization of the Century 21 system. Century 21 Real Estate of the South, Inc., is the regional franchising entity and is the entity by which Century 21 franchises are actually marketed and serviced. The remaining plaintiffs in the federal court litigation were individual Century 21 franchisees, licensed as such by the Commission to broker real estate within the State of Alabama. None of the parties plaintiff presently before this Court was a party to the federal litigation, nor did any of these parties plaintiff participate in any manner in the federal court litigation.
On August 18, 1979, United States District Judge Virgil Pittman entered an order dismissing the complaint filed by the federal court plaintiffs. This order of dismissal was entered pursuant to an agreement reached between all parties to that suit which provided, in substance, that the action would be stayed pending disposition by the United States Supreme Court of a case on appeal to that Court from a Nevada district court. The Nevada litigation involved issues similar to those raised in the Mobile federal court suit, all of which pertained to questions of federal law. The parties also agreed that the disposition of the Nevada appeal by the United States Supreme Court would govern the action pending in Mobile. Hence, when the Nevada decision in favor of the validity of a similar regulation was summarily affirmed, Judge Pittman entered his order of dismissal. However, as previously stated, none of the plaintiffs in the present case was a party to the federal court litigation nor in privity with any of the parties in that suit within the purview of the doctrine of res judicata. Moreover, none of these parties plaintiff consented to a resolution of any action that they might have had against the Commission as a consequence of its promulgation of the "50:50" Ratio Rule on the basis of the disposition by the United States Supreme Court of the appeal emanating from a Nevada district court.
The elements of the doctrine of res judicata have been precisely defined by this Court. In Wheeler v. First Alabama Bank of Birmingham, 364 So.2d 1190 (Ala.1978), this Court said:
The elements of res judicata are as follows: (1) prior judgment rendered by court of competent jurisdiction; (2) prior judgment rendered on the merits; (3) parties to both suits substantially identical; and (4) same cause of action present in both suits.
Id. at 1199. See also Dominey v. Mathison, 292 Ala. 293, 293 So.2d 472 (1974).
As the foregoing summary of the factual predicate for the Court's opinion indicates, it is quite apparent that there are at least two independent reasons why the doctrine of res judicata has no application to the instant case. First, there is a total absence of the requisite identity of parties or privity as between these plaintiffs and the parties by whom the federal court litigation was maintained. Second, the bar of res judicata only applies to issues which were or could have been litigated in the prior case.
As a general rule, the preclusive effect of the doctrine of res judicata is applicable *772 only to the parties to prior litigation and their privies. See, e. g., Dominey v. Mathison, supra; Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Privity, as used in this context, is said to denote a "mutual or successive relationship to the same right of property." Towns Truck Lines v. Cotton State Express, 266 Ala. 131, 94 So.2d 402 (1957). See also Brown v. Terry, 375 So.2d 457 (Ala.1979); Suggs v. Alabama Power Company, 271 Ala. 168, 123 So.2d 4 (1960). Clearly, the plaintiffs in the instant proceeding were not parties plaintiff in the federal court litigation, and under the facts of this case, I would reject the arguments that there was a substantial identity of parties, virtual representation of these plaintiffs by the plaintiffs in the federal litigation, and control of the state court litigation by the federal court plaintiffs.
The record reflects that the only nexus between most of the plaintiffs in the instant action and the plaintiffs in the federal court litigation is their common affiliation with the Century 21 franchise system. Even this tenuous link does not exist with respect to Lynn Clowers Real Estate Company, Inc., who is a Realty World franchisee, not a Century 21 franchisee. Moreover, with regard to the Century 21 plaintiffs, the fact remains that the business of each of these plaintiffs is independently owned and operated. The essence of the agreement between these parties plaintiff and the regional franchising entity is that of a lease of the Century 21 service mark. That is, for a stated consideration, these plaintiffs are authorized to utilize the Century 21 service mark and name for a specified term. Consequently, in light of the relationship illustrated by the contractual agreement made by the parties in this case, the plaintiffs in the instant proceeding were not in res judicataprivity with the plaintiffs in the federal court litigation, and this Court's conclusion to the contrary, I believe, is erroneous.
A second, equally compelling and independent, reason was present here for the rejection by this Court of the Commission's res judicata argument. It is well settled that the bar of res judicata extends only as to issues which were actually litigated or which could have been litigated in the prior action. The state law issues presented in the instant proceeding could not, as a matter of law, have been resolved by District Judge Virgil Pittman.
There is no question that federal courts are courts of limited jurisdiction and that, as such, they are empowered to hear only those cases within the jurisdiction conferred upon them by the Constitution or by Congress. In contrast, the circuit courts of the State of Alabama are courts of general, not limited jurisdiction. As a general proposition, federal courts cannot decide state law issues unless complete diversity of citizenship exists as between the plaintiffs and the defendants. Clearly, in the federal court litigation, diversity of citizenship did not exist. The Commission argues that under the doctrine of pendent jurisdiction, the federal court's jurisdiction could have been expanded, in spite of the absence of diversity, so as to comprehend the state law issues asserted by these plaintiffs in the instant proceeding. Under the facts of this case, such an application of the doctrine of pendent jurisdiction would have been without legal support.
A leading case on the subject of pendent federal jurisdiction in the context of the defense of res judicata is the decision of Pope v. City of Atlanta, 240 Ga. 177, 240 S.E.2d 241 (1977). In that case, the plaintiff originally brought a federal suit, challenging the Metropolitan River Protection Act on federal constitutional grounds. The federal court action was dismissed and the very same plaintiff then brought suit in the state court asserting that the act was violative of the Georgia Constitution. The trial court held a portion of the plaintiff's complaint to be barred by the doctrine of res judicata. On appeal, the Supreme Court of Georgia held as follows:
The doctrine of res judicata involves prior litigation by the same parties on the same subject matter in a court of competent jurisdiction as to all issues which *773 were raised or which could have been raised. Code Ann. § 110-501; Price v. Ga. Industrial Realty Co., 132 Ga.App. 107, 207 S.E.2d 556 (1974). Where state claims which "could have been raised" in the federal litigation would have been pendent had they been presented to the federal court, this court, in applying its res judicata statute, will use the same rules that the federal court would have used in determining whether it would exercise pendent jurisdiction. If the federal court would have retained jurisdiction of the pendent state claims had they been raised, then a subsequent suit in state court would be barred by res judicata; if the federal court would have refrained from exercising its pendent jurisdiction over the state claims, then the subsequent suit in the state court would not be barred by res judicata. In so doing, we conclude that the state issues in this case "substantially predominate" and would most likely have been left for state resolution had they been presented to the federal court. United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.E.2d 218 (1966). Therefore, now that these important state issues are before the state courts, we will not apply our res judicata statute to bar this litigation.
Id. at 243.
There can be little doubt that the rationale of the Pope case should apply with equal, if not more, force to the facts of the instant case. The reason that a Pope result is even more compelling here is that in Pope there was a complete identity of parties to the federal and state cases. Here, as previously shown, identity of parties is undeniably lacking. Moreover, Pope stands for the proposition that state law issues were not and could not have been litigated in the prior federal court action.
Based on all of the foregoing reasons, I must respectfully dissent.
FAULKNER and EMBRY, JJ., concur.
NOTES
[1] The "50:50" Rule, the regulation in question, reads:

Any company which operates under or uses a franchise name shall incorporate in the franchise name and logotype the company name; however, the company name shall not be less than 50% of the surface area of the entire combined area of both the company name and the trade name or logotype. This regulation shall be implemented immediately and effective in all advertising, except, signs, letterheads, cards, other printed supplies and materials. Such items shall be required to comply on or before November 1, 1978.
[2] This state law ground is not among the issues presented on the appeal.
[3] This groundwhether denominated federal law, state law, or bothis not an issue presented on the appeal, leaving the remaining three state law grounds here presented clearly within the prerogative of federal forum adjudication.
[4] While, for the sake of convenience, we have retained Appellees' designation of their res judicata contention as a "cross-appeal," in a technical sense this designation is a misnomer. The trial court, after rejecting Appellees' res judicata plea, nevertheless ruled adversely to Appellants on the substantive issue as to the validity of the "50:50" Rule, thus denying all relief sought by Appellants (Plaintiffs below). Appellees, therefore, do not seek a reversal as to any aspect of the final judgmenta necessary ingredient of a cross-appeal.
[5] This doctrine is discussed in A.L.I., Restatement (Second) of Judgments, § 61.1(e) (Tent. Draft No. 5, 1978, p. 160):

"e. State and federal theories or grounds. A given claim may find support in theories or grounds arising from both state and federal law. When the plaintiff brings an action on the claim in a court, either state or federal, in which there is no jurisdictional obstacle to his advancing both theories or grounds, but he presents only one of them, and judgment is entered with respect to it, he may not maintain a second action in which he tenders the other theory or ground...."
An exception to this rule, of course, is where the federal court, in the exercise of its discretion, elects not to entertain the state law ground. This did not occur in the instant case.